# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

vs.                                                                    **4:04cr26-RH**
                                                                       **4:06cv69-RH/WCS**
**RAMON ODIN LAGOS-MURILLO,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Pending in this case is an amended motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255.  Doc. 57.  The United States filed a response.  Doc. 59.  Defendant filed a reply.  Doc. 64.

Also pending is a motion for a judicial recommendation against deportation.  Doc. 69.  It has been referred to me for a recommendation.  The Government responded.  Doc. 72.

**The record**

The indictment charged that Denis Martinez-Murillo, also known as Antonio Cardona, also known as Raymond Lagos, illegally re-entering the United States after removal.  Doc. 1.  He was charged with illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2).  *Id*.

At the change of plea hearing, Defendant's attorney, William Clark, moved to have the indictment amended to reflect Defendant's correct name, Ramon Odin Lagos-Murillo and presented his birth certificate from Honduras. Doc. 35, p. 2. He said that in the past, Defendant had used a variety of names, but this was his true name. *Id.* Mr. Clark explained that Defendant wanted to be sentenced under his true name because the prison authorities would not permit him to visit with his three and one-half year old daughter. *Id.*, p. 7.

The Court asked Defendant if he preferred to be referred to as Mr. Lagos-Murillo, and he said yes. *Id.*, p. 2. The attorney for the Government said that Defendant was charged in the indictment under the name he gave the immigration court in his sworn statement, but if he agreed that he is the Denis Martinez-Murillo who was originally charged in this indictment, it would consent to the amendment. *Id.*, pp. 4-5. The Court granted the amendment, amending the indictment to add Ramon Odin Lagos-Murillo as the first name in the indictment, but keeping the other names. *Id.*, pp. 7-8. See also docket entries 20 and 21.

The Court then explained to Defendant that he must answer all questions truthfully and could be prosecuted for perjury if he did not. *Id.*, p. 9. The Court asked Defendant if he had been known by other names, and Defendant said "[t]here was Martinez, Denis Martinez, Antonio Cardona, Raymond Lagos." *Id.*, p. 10. He admitted he had used each of those names. *Id.*

The Court questioned Defendant as to whether the specific statements in the Factual Basis for Plea were true, and Defendant said that those facts were true. *Id.*, pp. 18-23. Defendant admitted under oath other essential elements of the offense, that he

had been convicted in 1997 of assault upon an officer, and in 2002 of felony fleeing and eluding and felony possession of contraband in a prison, and he admitted he had been deported in 1997 and 2002 as set forth in the Factual Basis for Plea. *Id.*

The Factual Basis for Plea stated that Defendant pleaded guilty to illegal entry on October 23, 1997, having averred that he was born in Morelia, Michoacan, Mexico, and he was deported on November 13, 1997. Doc. 16, p. 1. On December 12, 2002, Defendant, using the name Antonio Cardona, having again been found in the United States, was determined to be subject to removal through reinstatement of his prior deportation order. *Id.*, pp. 1-2. In connection with that second deportation, he again stated he was born in Morelia, Michoacan, Mexico. *Id.*, p. 2. He was deported on December 28, 2002. *Id.* He was found again in the United States on December 24, 2003, at the Leon County Jail under the name Raymond Lagos. *Id.* Based upon fingerprint comparisons, he was identified as the Denis Martinez-Murillo who had been deported originally on November 13, 1997, and again on December 28, 2002. *Id.*, pp. 2-3.

The Court explained to Defendant that he could be sentenced to as much as 20 years in prison based upon his guilty plea. Doc. 35, pp. 23-24. He said that he understood. *Id.* The Court explained to Defendant that if his attorney's prediction as to the sentencing guidelines proved to be incorrect, he would have no basis to withdraw his guilty plea. *Id.*, p. 24. The Court asked Defendant whether there were any promises made to him that were not contained in the written plea agreement, and he said no. *Id.*, pp. 25-26. He specifically denied that anyone had promised him "what sentence will be imposed . . . ." *Id.*, p. 26. He denied that anyone had threatened or pressured him to

plead guilty. *Id.* The Court again asked if "anybody made you any promises about what sentence will be imposed if you plead guilty," and Defendant said "no." *Id.*, p. 27. Mr. Clark and Robert Davis, the Assistant United States Attorney, both assured the Court that no promises had been made to Defendant other than in the plea agreement. *Id.*, pp. 27-28. Defendant was sentenced to 86 months. Doc. 38, p. 15.

**Ground One**

Defendant contends that he is not the Defendant named in count one (Denis Martinez-Murillo), though he admits he used that name. Doc. 57, p. 8 (on the electronic docket). He claims that the prosecutor forced Defendant to "become" Denis Martinez-Murillo. *Id.*, p. 10. He alleges that the name gives him bad memories because it was forced upon him by a "human smuggler." *Id.*. He claims that he was deprived of effective assistance of counsel because his attorney allowed him to plead guilty to count one under these circumstances. *Id.*, p. 3.

The law governing ineffective assistance of counsel claims was established in <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of <u>Strickland</u>, Petitioner must demonstrate both deficient performance and prejudice to the outcome. To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has

a heavy burden to establish the deficient performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> Further, in a challenge to a guilty plea under § 2255:
>
> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

Generally speaking, an indictment may be amended without going back to the grand jury as to matters of form, such as to correct a misnomer. United States v. Johnson, 741 F.2d 1338, 1341 (11th Cir. 1984), *cert. denied*, 471 U.S. 1117 ( 1985),

citing 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 127, at 420 (2d ed. 1982) and United States v. Janoe, 720 F.2d 1156, 1160 and n.8 (10th Cir. 1983), *cert. denied*, 465 U.S. 1036 (1984) (collecting cases).

Here, Defendant was well-aware of the purpose of the amendment, consented to it, and admitted he had used all of the names in the indictment. Neither attorney error nor prejudice to the outcome has been shown.

**Ground Two**

Defendant contends that his attorney concealed information from the Court. Doc. 57, p. 3. The information, and the relationship of that information to the claim of ineffective assistance of counsel, is unclear. It may relate to Defendant's history of having been abused by the Honduran army as a teenager. That information was not concealed. It was before the court at the change of plea and at sentencing. Doc. 35, pp. 11-13; doc. 38 (sentencing transcript), pp. 3-5.

Petitioner also faults his attorney for not collaterally challenging the original deportation order and the reinstatement order. "The bottom line is that the FIRST DEPORTATION must be INVALIDATED!" Doc. 57, p. 26.

Gathering allegations from various documents, the following appears to be Defendant's claim. Defendant was enlisted in the Honduran Army when he was 13 years old by his uncle. Doc. 38, p. 4. It is unclear when this occurred. The record contains a birth certificate that shows that Defendant was born on September 8, 1968. Doc. 57, p. 40 (Certificación De Acta De Nacimiento, Certification of Record of Birth). He would have been 13 years old in 1981. Nonetheless, he suffered greatly during this period. He was assigned to death squads that killed civilians. Doc. 38, p. 4. He tried to

run away, but was severely beaten and tortured. *Id.* The details of that brutal torture are described in a letter to the Court. Doc. 59, Ex. 2 (doc. 59-3 on the electronic docket). Defendant eventually escaped, first to Guatemala, then to Mexico, and then to the United States. Doc. 38, p. 8. Defendant asserts that during the first deportation, he was in the hospital for a seizure and had "no choice" but to give a false name and false country of origin (Mexico). Doc. 64, pp. 2-3, 5. He asserts that during the second deportation, he denied being Denis Martinez-Murillo, and repeatedly requested to see a judge and a lawyer. *Id.*, p. 3. Defendant contends, therefore, that the deportation was illegal because he was not Denis Martinez-Murillo and Mexico was not his country of origin. *Id.*, p. 4. He explains that because of the torture he endured in Honduras, he would do anything possible not to be deported back to Honduras, and hence, gave Mexico as his country of origin. *Id.*, p. 5; doc. 57, p. 16.

> This claim, under limited circumstances, was available to Defendant.
>
> Where, as here, a criminal prosecution is based upon an underlying deportation order, an alien may attempt to collaterally challenge that order in the court in which the prosecution takes place.

United States v. Charleswell, 456 F.3d 347, 354 (3d Cir. 2006); United States v. Zelaya, 293 F.3d 1294, 1297 (11th Cir. 2002) (citing 8 U.S.C. § 1326(d)).

> (d) Limitation on collateral attack on underlying deportation order
>
> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that –
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "These three requirements are listed in the conjunctive, meaning that all three must be met before an alien will be permitted to mount a collateral challenge to the underlying removal order." United States v. Torres, 383 F.3d 92, 99 (3rd Cir. 2004) (citations omitted).

> Third, "fundamental unfairness requires a showing that specific errors prejudiced the defendant." *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir.1989). An alien characterizing a deportation as fundamentally unfair must, at a minimum, demonstrate that the outcome of the deportation proceeding would have been different but for a particular error. *See id.* at 1537.

Zelaya, 293 F.3d at 1298; Charleswell, 456 F.3d at 361-362 (fundamental unfairness requires a showing of "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred").

Defendant has not made this showing in this case. He has not shown that he was improperly denied judicial review or that the deportation was fundamentally unfair. Had he identified by his correct name and country of origin, he would have been deported to Honduras. While there are procedures for seeking asylum to avoid removal, there is no showing here either that Defendant sought asylum or had a viable asylum claim. Therefore, neither attorney error not prejudice to the outcome has been shown and ground two affords no relief.

**Ground Three**

Defendant contends that he had ineffective assistance of counsel because his attorney instructed him to not answer questions from the Court truthfully in exchange for

a "promise to time served." Id., p. 4. He said that he told his attorney that if he were to be deported to Honduras, "the Honduras Army was [going to finish] with him," so Defendant tried to do whatever was needed to avoid such torture again. Id., p. 16. Consequently, he began to use the name Denis Martinez-Murillo. Id. He asserts that his attorney told him he was going to receive a sentence of time served and be deported. Id., p. 22.

This claim is contradicted by Defendant's sworn testimony at the change of plea hearing set forth above. He told the Court that no promises had been made to him concerning the sentence he might receive. Ground three is without merit.

**Motion for a Judicial Recommendation Against Deportation, doc. 69**

This motion recounts the horrible torture that Defendant suffered in Honduras. The Court, however, does not have legal authority to make a recommendation. The authority of a trial judge to issue a Judicial Recommendation Against Deportation was eliminated as part of the Immigration Act of 1990. Pub.L. No. 101-649, § 505, 104 Stat. 4978, 5050 (1990); see also United States v. Couto, 311 F.3d 279, 189 (2d Cir. 2002) (noting the amendment to former 8 U.S.C. § 1251(b) by the 1990 Act).

While the Court theoretically is not prohibited from making a non-binding recommendation, it should not do so here. The persecution of Defendant occurred perhaps 25 years ago in Honduras, if it is correct that Defendant was born in 1968. The current danger to Defendant, should he now return to Honduras, has not been shown.

It is noted for the benefit of Defendant that there are procedures for seeking asylum in this country. Li v. U.S. Atty. Gen., 488 F.3d 1371 (11th Cir. 2007); Delgado v. U.S. Atty. Gen., 487 F.3d 855 (11th Cir.); Rodriguez Morales v. U.S. Atty. Gen., 488

F.3d 884 (11th Cir. 2007). The Court expresses no opinion as to whether any of these procedures are now available to Defendant.

For these reasons, it is **RECOMMENDED** that Defendant's amended motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255, doc. 57, and his motion for a judicial recommendation against deportation, doc. 69, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on August 8, 2007.

s/ William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.